**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

DEC 2 8 2009

Clerk, U.S. District and
Bankruptcy Courts

KAREN MCBRIEN                          Case No.
3616 Far West Blvd.
#117-252
Austin, TX 78731
(512) 586-8978

    PLAINTIFF                    Case: 1:09-cv-02432
                                       Assigned To : Roberts, Richard W.
    vs.                          Assign. Date : 12/28/2009
                                       Description: Pro Se Gen. Civil

UNITED STATES
AND DOES 1-100

    DEFENDANTS


**COMPLAINT**

**PLAINTIFF'S NOTICE OF FILING FTCA CLAIM**


    Plaintiff Karen W. McBrien intends to file a claim under the FTCA for damages done to her, her property, her civil rights, her reputation, and her litigation. Plaintiff files this action under 28 USC sections 2674, 2679, 2675, 1346, and any other applicable FTCA code sections. Plaintiff originally filed this action on 8/6/09, and seeks to reinstate this claim to this Court for action. Plaintiff also feels that the ADA code sections also may apply in this matter.

    Plaintiff has named defendants other than governmental agencies for if they are contractors for these agencies, empowered to act on behalf of the agency and at the direction of the agency, then they may fall under this claim for damages. If this is error, Plaintiff will exclude those entities that do not qualify for this claim, as an amended claim and requests court permission to do this.

CAUSES OF ACTION

The Causes of Action are: Personal Injury; Intentional Infliction of Emotional Distress; Civil Conspiracy; Civil Rights Violations; 42 USC 1983, 1981, 1985 regarding law enforcement misconduct and civil rights violations, involving lack of privacy; unreasonable search and seizure of legal documents; unlawful detainer; threats of harm or arrest; lack of access to counsel; and preclusion from any and all assistance; Violation of Fourth, Eight Amendments to US Constitution; Toxic Asbestos Exposure, Product/Premises Liability; Interference with a Prospective Economic Advantage, with the parties named herein intending to cause financial damage to Plaintiff and to drive her to bankruptcy, homelessness, and have her live in poverty; Defamation/Slander, with parties accusing Plaintiff of being someone that she has never been before; denial of Due Process; ADA discrimination; disclosure of private health information in violation of HIPAA; car tampering; food and drink tampering.

Other Causes of Action are for Denial of the Right to Pursue Happiness; Intentional Interference with Reproductive Rights; Denial of Right to Freedom; Medical Malpractice; Lack of Human Subject Research Protection; Interference in the Parent-Child Relationship; Interference so as to Cause a Spoilage of Evidence; Interference with Telecommunications; Interference with Mail; Interference with Child Custody; Interference from Use of Medical Devices and Drugs without knowledge or consent; Enrollment of Patient in Study without knowledge or consent; Securities Fraud; Fraud; Breach of Contract; Identity Theft; and other causes of action, to be named later.

US DEFENDANTS

Defendants FBI; Robert Mueller; DHS; Janet Napolitano; CIA; Leon Panetta; CIA OIG; John Helgerson, Patricia Lewis; TSA; US Marshals; DOJ; Eric Holder; US Attorney's Office; Gil Kerlikowske; DEA; White House Office of Counsel; President Obama and Vice President Biden of White House; Former President George Bush and Vice President Dick Cheney; Former President Clinton and VP Al Gore; White House Office of Science and technology; John Holdren; Secret Service; Mark J. Sullivan; Federal Protective Service; NSA; Office of National Intelligence; Dept. of State; Hillary Clinton; DOD; Robert Gates; US Navy; Michael Mullin; US Army; DARPA; NSF; IRS; Department of the Treasury; Timothy Geitner; Ben Bernanke; ATF; NCIS;

Amtrak; Amtrak police; Amtrak OIG; Air Marshals; Federal Railroad Administration; National Forestry Service; National Science Foundation; National Institutes of Health; Office of Naval Research; Dept. of Transportation; Raymond LaHood; Dept. Veteran's Affairs; Shinseki; Dept. of the Interior; Ken Salazar; EPA: HHS; Kathleen Sebelius; Dept. of Energy; Steven Chu; Dept. of Education; Dept. of Children and Families; USPS; Dept. of Commerce; Gary Locke; Dept. of Labor; Hilda Solis; Federal Highway Administration; FAA; the airports and their federal security directors at SFO, Austin, TX, Houston, TX, Dallas, TX, Dallas-Love Field, Denver, CO, Phoenix, AZ, Fresno, CA, San Diego, CA, Sacramento, CA, Baltimore, MD, Washington-Reagan, Dulles, VA, Anchorage, AK, and other airports; United States Senate; mainly US Senators: Kennedy; Kerry; Kirk; Schumer; Dodd; Bailey Hutchinson; Cornyn; Durbin; Bond; McCaskill; McCain; Kyl; Feinstein; Boxer; Specter; Begich; Murkowski; Cardin; Casey; Reid; Ensign; DeMint; Graham; Gillibrand; Grassly; Harkin; Klobuchar; Martinez; Nelson; Murray; Rockefeller; Udall; M. Udall; Hagan; Shelby; Sessions; Alexander; Corker; Inouye; Lieberman;

United States Congress, mainly Nancy Pelosi; Lloyd Doggett; Patrick Kennedy; Neil Abercrombie; Robert Wexler; Dennis Moore; Jay Inslee; Darryl Issa; Ken Calvert; Peter Hoekstra; Silvestri; the congressional offices for Austin, TX, Fresno, CA, San Francisco, San Mateo, Oakland; Berkeley; San Diego, Sacramento; Riverside; Houston; San Antonio; Dallas; Seattle; Philadelphia; and those chairs of committees that deal with the armed services, intelligence agencies, transportation, homeland security, health and human services, science and technology.

FOREIGN ENTITIES

British Foreign Office; Prime Minister Gordon Brown; Luxembourg Consulate; Luxembourg Ambassador; Luxembourg's ruler; German Consulate; German Minister Angela Merkel; Italy Prime Minister Silvio Berlusconi; India Consulate; India Prime Minister Dr. Manmohan Singh;

French President Nicholas Sarkozy; and other foreign leaders to be named who took any actions against Plaintiff;

HOSPITALS,DOCTORS AND UNIVERSITIES

Stanford University; Mills-Peninsula Hospital; Sequoia Hospital; Kaiser Hospital; Community Medical Providers of Fresno; UCSF; UC-Berkeley; UT-Austin; Fresno Pacific University; Fresno State University; University of Missouri; University of Minnesota; Boston University; Cambridge University; and others have caused Plaintiff and her minor child to suffer personal injury and financial damages due to their actions, which are mainly the lack of usual and customary medical care, medical malpractice, the giving of prescriptions and medical devices that have harmed both Plaintiff and her minor child.

LAW ENFORCMENT; POLICE, FIRE, EMS; SHERIFF; TRANSIT POLICE

Plaintiff believes that they instructed and coordinated actions against Plaintiff and her minor child that extended to the sheriff, fire, EMS, and police departments of Fresno, CA; San Francisco, CA; Sacramento, CA; Los Angeles, CA; Berkeley, CA; Stanford, CA; San Mateo, CA; South San Francisco, CA; Austin, TX; Houston, TX; Dallas, TX; Baltimore, MD; Washington, DC; Anchorage, AK; Seattle, WA; and other jurisdictions. This also includes transit police for the above-named jurisdictions;

PRIVATE CONTRACTORS

Plaintiff wishes for this FTCA claim to extend to contractors for the above-named federal agencies such as Blackwater or XE; Securitas Personnel; Covenant Personnel; the US Marshals contractor; the TSA contractors at the airports of SFO; AUS; DFW; DCA: BWI; OAK: ANC; Phoenix; San Diego; Denver; and other locations. Plaintiff feels that they acted as federal agents and their actions resulted in damages to Plaintiff and her minor child. They gave Plaintiff food and drink that caused her bodily injury; they conducted search and seizure of legal documents, so that she could not be successful in litigation;

STATE GOVERNMENTS

Plaintiff also feels that the orders and actions described in this complaint also **extend to** the state governments, their governors, and their attorney's general of the states of: California; Gov. Schwarzenegger; Texas; *Gov.* Perry; DC; Alaska; Illinois; North Carolina; South Carolina; Pennsylvania; Arizona; New Mexico; Nevada; Colorado; Florida; Connecticut; New York; Gov. Patterson; Washington; Iowa; Hawaii; Missouri; and other states where Plaintiff has lived, or has relatives that currently reside there, or has ex-relatives that reside there. The order, however, may extend to all states for action against Plaintiff.

TRANSIT SYSTEMS

Further, Plaintiff feels that this also has extended to transportation systems and their transit police, sheriffs or other law enforcement personnel of: MUNI of San Francisco; SamTrans and CalTrain of San Carlos, CA; FAX of Fresno; BART of, Oakland, CA; Capitol Metro of Austin; Metro Rail of Los Angeles; Metro buses and subway of Washington D.C.; MTA of Baltimore, MD; and the municipal bus and rail systems of the same cities named above that refer to the police and sheriff departments, especially the sheriff departments that oversee the rail systems and are responsible for public safety.

COURTS; JUDGES; COURT PERSONNEL;

Plaintiff strongly feels that the courts, judges, personnel, and law libraries of Fresno Superior Court; Fresno Court of Appeals an Francisco Superior Court; San Mateo Superior Court; Travis County District court; Harris County District Court; Los Angeles Superior Court and law library; US District Court, San Francisco; US District Court, Austin, TX; US District Court, Washington, DC; US Court of Federal Claims, Washington DC; interfered with her right to counsel; right to due process; right to privacy, of private health information; right to her court files; right to enter the building to handle a case; right to correct filings, processing of filings, wrongful information, lack of information, derogatory language and labeling, yelling and threatening

Plaintiff,

AIRLINES

In addition, Plaintiff feels that this claim extends to airlines, for if they were instructed by TSA, DHS, FAA or federal security directors or others, they also bear some responsibility for the seizure of her legal documents and the destruction and continual damage to her luggage.

The airlines are: Southwest; US Air; AirTran; Virgin; Frontier; American; Alaska; Continental; Delta; and United. Their personnel have treated Plaintiff in an openly discriminatory manner, with engaging in conduct against her so that a report against Plaintiff could be made. They have also served food and drink to Plaintiff that caused her to have an instant headache and burning throat and stomach. It also caused Plaintiff to experience perspiration all over her body immediately after ingesting. Those symptoms, Plaintiff was told by a Poison Control doctor, reflect either a poisonous substance or from a tranquilizer being given to Plaintiff. Plaintiff has lost numerous legal documents and been bumped off flights as recently as this past February. On a Southwest flight from SFO to Austin, Plaintiff had possibly an air marshal sitting next to her. He said, "What do you care if you're being surveilled if you're doing nothing wrong? Why don't you go and live by yourself in a remote area somewhere?" Plaintiff was also told to go and live in a remote area in a Berkeley hostel last year by a purported university researcher from Louisville, KY.

UNIVERSITY CAMPUS POLICE; JTTF OPERATIONS

Plaintiff has been seriously portrayed so that she received police and bomb squads on the campuses of UC-Berkeley, Stanford, and UT-Austin, with helicopters flying overhead, after the people surveilling her called in wrongful reports about her and her briefcase of legal documents. Plaintiff wonders whether she has had this done to her by JTTF, ATF, DHS, DOD, police SWAT teams or another entity.

OIL COMPANIES; ROOFING FIRMS; MANUFACTURERS; PHARMACEUTICAL COMPANIES

Plaintiff also feels that this suit includes the businesses of T-Mobile; Chevron; Exxon-Mobil; ABC Supply Co., Inc.; Owens-Corning Fiberglas; Flintkote; NeuroPace; Pfizer; DuPont Pharmaceuticals; and other entities yet to be named, that perform in conjunction to federal studies, grants, contracts, or other governmental research. Also T-Mobile; Yahoo;

CHURCHES, CHURCH GROUPS, CHURCH SOCIETIES

Further, Plaintiff feels that this includes counterintelligence and surveillance by federal agents from FBI, CIA, DOD, military intelligence; MS; NSA; and other agencies who enlist personnel from churches, organizations and possibly religious societies to spy on people, collect information on them, sabotage their reputation, make things go wrong, and affect them severely financially. The churches include: the Episcopal Church of New York City; Mennonite Brethren Church of Indiana; Baptist Church; Church of Latter-Day Saints of Salt Lake City; and other churches that have performed interference and surveillance of Plaintiff and have negatively also affected her minor child. Some of the priests involved have also worked for oil companies **in** the past. Plaintiff wonders whether this is surveillance that was authorized by Pres. Bush, Obama and VP Cheney and Biden against Plaintiff, and possibly has been the FBI or CIA. Plaintiff wonders whether it has been COINTELPRO, conducted by the FBI against her, or JTTF performed by the CIA or a CIFA group from the DOD or a group from DHS and TSA.

Their actions have included search and seizure of her legal documents, personal identification, checkbooks, and mail; wiretapping; surveillance equipment in her car, home, apartment, hotels or wherever she stays; wrongful accusations and portrayals; defamation pursuant to these portrayals; detainment; surveillance and eavesdropping; causation of things to go wrong in financial, medical, educational, housing, employment and other areas of her life; being precluded from usual and customary assistance in all areas, including legal, medical, educational, financial, employment, housing, transportation; and other areas; intentional discrimination, due to Plaintiff's ADA-recognized

disability; intentional infliction of severe emotional distress, to try to cause harm to Plaintiff; performing counterintelligence field operations, which have included trailing and shadowing Plaintiff to wherever she goes and telling people not only to assist her, but also to treat her wrongfully, discriminatorily, and even harm her; and other actions.

Plaintiff feels that she has been wrongfully portrayed as someone that she has not ever been by the agencies and entities named in this suit and has had damages resulting from the actions of the agencies and their personnel named herein this suit.

## FEDERAL ORDER

This section is about a possible FBI, DHS, DOD, DOJ, NCIS, NSA, CIA, or other order issued against Plaintiff and her child in 2001.

In October 2001, after Plaintiff and her ex-husband, David McBrien had a terrible fight where they said angry words to each other, her ex-husband and his brother went to Washington DC and may have obtained some sort of order against plaintiff, one that has severely restricted and affected her and has resulted in everything going wrong for her and her child. Her ex-husband's relatives told Plaintiff that they worked in the legal department **in** San Francisco FBI, so any tort claim filed there would be one that they would potentially handle, so Plaintiff filed the request here. Also, if Robert Mueller issued an order against Plaintiff, it would have come from DC office and the San Francisco field office. Plaintiff requests discovery of this order, for it more than likely will reveal what the nature of the order against Plaintiff has been that has severely and negatively affected her and her minor child for many years. Their lives have been ruined and professionally sabotaged, with much abuse occurring. Her ex-husband told Plaintiff that he could do anything to her that he wished because he'd already told everyone that Plaintiff was "nothing but a whack job" and that no one would believe her or assist her, and if she complained about how badly she and her minor child were getting treated, it would only get 'much, much worse" for the. Whatever this order has been, it has precluded Plaintiff and her child from the freedom to pursue happiness, usual and customary

assistance, and has isolated and weakened them *in all areas* of their lives. No one has this done to them for no reason by law enforcement and others without an agreement to do so by a federal agency.

In June 15, 2009, when Plaintiff went to SFO to ask about whether she was on a list or about why she has had search and seizure or been searched and bumped off flights continuously, she was wrongfully detained by SFPD, who did not give her access to any lawyer. This was done intentionally to damage Plaintiff and to protect the SFPD from any suit for liability of their actions taken against Plaintiff. In March 2009, a SFPD officer told Plaintiff that she should think about ending her life. This is considered to be a wrongful act by a police officer, but it made Plaintiff understand the motivation of the various law enforcement that have been mistreating he. Plaintiff feels that they wish for her life to be over, and have wrongfully framed her as being someone that she has never been, in order to justify actions taken to end Plaintiff's life. Plaintiff was told in San Diego, CA, in early December 2009 that she was "in her final chapter." Plaintiff now wonders whether this has been a safety agency associated with DOT, rail and subway systems and airports all along.

In July 2009, when Plaintiff went to the San Francisco ATF offices to deliver a FOIA request and to speak with an agent about this matter, she was told, "You're a nut. I'm not going to process any request. Now hit the bricks or I'll have you arrested." When she went to the SF FBI office to request information, she is either treated derogatorily, as if they don't care, or is told that she cannot have information regarding her file. When Plaintiff called DHS last year after not having any FOIA request honored for 2 year, she was told, "If you want to know why all of this is happening to you, you'll have to hire an lawyer, perform a FOIA request, go to court, and see if a judge will tell you."

Plaintiff, for most of her life, especially the past few years, has had defamatory, discriminatory, and serious allegations made about her which have resulted in the above-named actions against her as well as actions taken to threaten and order an end to Plaintiff's life,

in a wrongful death action against her. Plaintiff was told recently to

purchase life insurance, for she may be passing away soon or have an accident soon; that if she inquired too much about her relatives, this

situation or why this was transpiring against her, that

"curiosity killed the cat"; she had a car drive by with the words "R.I.P. *JR*"

written on it; had Securitas Personnel on a rail system mention that one should live for today, because tomorrow could be their last day  alive; and was approached by a man on Caltrain who talked about a

woman who was viewed as a security risk on trains, buses and roads, who came down with a mysterious stomach ailment that no one could determine.

RELATIVES EMPLOYED BY US GOVERNMENT OR FEDERAL CONTRACTORS
Plaintiff has adversarial relatives David McBrien of Fresno, CA James Robert McBrien of Las Vegas and Russ McBrien and Ben Gardner of

San Francisco that have a risk management firm called Adjunct LLC that

is operated out of Las Vegas and who may have a federal, state or local contract to provide risk management services to government agencies. Plaintiff wishes for this claim to include this entity, as it may have provided false risk analysis of Plaintiff to federal, state and local transit, fire and other agencies so that she is viewed as a risk and is treated the way that she has been. She has more adversarial relatives, who have been in the US Navy and may have ordered these actions against Plaintiff, and who may be part of biomedical or other research. Their actions have included setting up false offers of employment, marriage, and friendships, where the parties involved intentionally deceived Plaintiff that they ever intended to do anything beneficial for her. Another relative has worked in the past few years for the US Forest Service and Fire/EMS departments in California, and may have intentionally portrayed

Plaintiff as someone that would do harm. Plaintiff has had surveillance from US Forest Service, and could not figure out why until recently.

Plaintiff has been told by a purported military man that she and her child are possibly human subjects of research, possibly that of biomedical, biogenetic, or other, and it has caused Plaintiff and her daughter to have severe, unusual personal injuries to their bodies. They have unusually extremely loose joints, so loose that their bones stick out and pop out, from years of being given medications or substances that caused this to occur. Plaintiff's daughter has her knees, legs and ankles dislocate with little to no problem. Their teeth are yellow, and their hair falls out. They have also experienced an inability to concentrate. A woman approached Plaintiff and said, "Don't you wonder why you have always looked so young?" Plaintiff now wonders if she has been given something for this to have occurred.

In the Church Senate Committee hearings of the 1970's, it was discovered that the DOD, FBI, CIA and others had used people as subjects of research for experimentation on them without their knowledge or consent. Plaintiff and minor child also had delays in growth and development, and may have been given steroids to achieve this. This may be due to their families being involved with life sciences research, brain behavioral research, forensic, and other genomic research, such as that conducted at Stanford. It also may be due to federal agencies such as FBI, Dept. of State, DHS, NCIS, or any of the above-named agencies and entities named in this suit, who are known to have conducted such research.

The military, DOD, Navy, Army, ONR or other agency, may have enticed and deceived Plaintiff into a marriage that has turned out to be a false offer and one where it is now apparent that her husband and his family only had the intent of harming her the entire marriage and with any pregnancy, possibly to receive a reward for it from the federal agencies listed in this complaint. Thy also may have done it to use her and her child for testing of pharmaceutical drugs, for which they may have made lots of money from. Plaintiff does not know, but has been given recent hints that this may be a homosexual naval biomedical genetic research group from NSF or ONR, that Plaintiff

has never been informed of, but if true, would have possibly exposed her to HIV/AIDS or given her fear of HIV/AIDS for the rest of her life. Her ex-husband's father, James Robert McBrien was in the Navy in the Korean War and her brother in law, Roger Hull, was in the Navy in the SPAWAR program, one that Plaintiff understands possibly performs biomedical research. Her brother in law lives in Anchorage, and her ex-husband went to Anchorage in 2006 to receive a "bonus from his employer" after their divorce trial was finished. His firm, ABC Supply, does not have a branch in Anchorage. Plaintiff wonders whether her ex-husband may have been a federally-contracted employee all this time. JR McBrien warned Plaintiff to stay in her marriage. Her ex-husband always told Plaintiff that she had "a great body," but paid little attention to her as a person, especially in the last 2 years of the marriage, after obtaining the order in 2001. Plaintiff now wonders if it was because her body may have been filmed and put onto the Internet, or because it may have been used for research, or both. Plaintiff awoke one night to find a camera set up to her ex-husband's computer in their bedroom.

Plaintiff's lawyers did not perform for her. Each lawyer and judge that she has been referred to has had a conflict of interest, where they were in the military, life sciences, had asbestos or oil industry as a client or were possibly gay. Many of the lawyers that Plaintiff had retained now have enhanced law practices, possibly after receiving awards from the federal government for actions taken against Plaintiff, by not performing for her and not giving her effective assistance of counsel.

Plaintiff was introduced to her ex-husband by her father, who had him as his Owens-Corning Fiberglas client in the roofing business. Her father was in the Army. Flintkote, James McBrien's former employer, may have been Pillsbury's client, Plaintiff recently learned. All of these family members may also be part of a group such as OSS, FBI **SIS**, or military intelligence. They are highly intelligent and do not care for Plaintiff or her minor child, as Plaintiff has a disability and her minor child had developmental delay. They may have only been interested in Plaintiff in order to preclude an asbestos claim. They may have arranged for Plaintiff to be used for brain behavioral research by neurologists and patents invented by them at Stanford, Mills-Peninsula and

the other hospitals that are named in this suit. DOD, FBI, CIA, NCIS and police departments are all known for conducting such studies. A SF FBI duty agent said to Plaintiff in January 2008, "I suppose you're going to tell me that we can read your brain." Plaintiff had not even brought the subject up, but his stating this to Plaintiff made her wonder whether she has been the subject of FBI brain behavioral research without her knowledge or consent, pursuant to an order of some type, and may have involved the Navy, Seattle Police, SFPD, and other law enforcement forensic studies, a patent, and a brain device developed by NeuroPace by a neurologist at Stanford. Plaintiff was told by a neurologist that hand-held devices operate these devices, and could be the reason that Plaintiff has felt different brain stimulations from people surveilling her with these hand-held units.

The California AG has had a deputy AG named Catherine McBrien, whose address was the same as that of Pillsbury, Winthrop in San Francisco, and she may have been *a* relative that set up things to go this way. There is also a McBrien that was in the US Treasury Dept. and another in Naval biomedical research as well as one in NIB Cancer center. Many relatives have recently had cancer and Plaintiff wonders whether this is a cancer research group, or a group that is allowed to give people carcinogens to cause them to get cancer. One of Plaintiff's attorneys, when Plaintiff and her child felt that her ex-husband was giving them drugs and substances that gave them severe headaches, said that anyone who would drug and poison someone to death was called a "silent killer." Plaintiff wonders whether she has been victimized by agencies that have authorized her to be harmed through different drugs, substances, and devices to harm her and/or kill her, due to their wrongful portrayal of her, involving serious allegations.

Plaintiff feels that the McBriens have committed felony child abuse against her minor child by giving her child substances that have harmed her; from a lack of care from not taking her to the doctor for injuries; encouraging her to commit wrongful acts, so that it could be used against her; feeding her fattening and sugary foods, so that she is now overweight and could develop diabetes or the disability that Plaintiff has; and from having her miss much school, so that she failed and was

seen as truant. She also suffers from sleep deprivation and is being given Melatonin, possibly as part of a study or patent, by the entities named in this claim. Her child would tell Plaintiff that she was home feeling dizzy and sick again, but Plaintiff could get no assistance. When Plaintiff has gone to HHS, CFS, CPS, and other agencies in DC, California, and Texas to report abuse, nothing is ever done to stop it, as the agencies involved are worried about an investigation, especially in Fresno and San Francisco. Plaintiff and minor child ran away from her ex-husband in 2004, only to receive no assistance, and no entry into any domestic violence shelter or any TRO. Plaintiff came to DC in March 2009 to talk to HHS, Child and Family services, DOT, and others about this situation, but was only threatened with arrest. Plaintiff is worried that her daughter has been given steroids to sterilize her and masculinize her, if the McBriens are doing it for gay diversity biomedical research.

Plaintiff was given wrongful offers of employment with ABC Supply, Clovis Unified School District, and Pillsbury, Winthrop, that Plaintiff recently realized were never true offers of employment but rather offers where relatives and others that worked there or had contacts there, could negatively affect Plaintiff and her child and contacts there, could negatively affect Plaintiff and her child and

her employment future. Pillsbury, Winthrop, in fact, may have had a contract with the California AG, DOJ or FBI, to hire Plaintiff in order to investigate her at the same time and to have things go wrong for Plaintiff from clients of their firm, such as the City of San Francisco, Stanford, Citibank, British Foreign Office, DOD, FBI, CIA, and others. Plaintiff only recently learned of this possibility, and that she also may have been hired so that it precluded a lawsuit against the State of Hawaii for asbestos exposure.

Plaintiff has been discriminated against in housing wherever she goes, so that no one wishes for her **to stay there, and do intentional, discriminatory** acts against her that force *her* and her child to leave. Plaintiff wonders of the IRS, FBI, TSA, DRS, DOJ, or other federal agency has made this occur. This occurred in Austin, and each apartment that they moved to had the same-sized hole carved into the ceiling after Plaintiff moved in. In one apartment in Austin, a roofer

fell through the ceiling, and it spewed asbestos-containing ceiling material that destroyed all of Plaintiff's and minor child's belongings, as well as gave them a toxic exposure to asbestos. When Plaintiff called the EPA, Texas State Dept. of Health, and the CDC, she did not get correct information nor any follow-up on her claim. In fact, plaintiff feels that much of the surveillance against her has been from parties not only interfering with filing of lawsuits, but also the filing for any asbestos claim for her and her daughter. The agency ordering this surveillance may ha been the police, FBI, IRS, DHS or others named in this suit. No one usually has holes carved into the ceilings of their apartments each time unless they're being surveilled. Surveillance equipment was discovered in Plaintiff's home in Fresno as well as in her car. Plaintiff feels that *she* has been surveilled and possibly filmed, by her ex-husband and others, but when she has asked for help from a private investigator, police or FBI, she did not receive any. Plaintiff regularly receives intentionally rude and discriminatory conduct from hotel wonders of Indian descent in California and elsewhere, and she wonders whether the State Dept. or the India Consulate ordered this.

    Plaintiff requests this court to assist with a FOIA request for discovery about this matter, as the agencies that Plaintiff has contacted will not assist her.
    Plaintiff makes this FTCA claim under 28 USCA 2680, 1346 and *all* other applicable federal statutes.
    Plaintiff further makes this claim against the new administration members of Robert Mueller, Robert Gates, Janet Napolitano, VP *Joe* Biden, Leon Panetta, Hillary Clinton, Eric Holder, Pres. Barack Obama, and others, for their part in the withholding of information and their actions whereby they may have signed an order against Plaintiff, one that precluded her and her daughter from all usual and customary assistance, and one that was transmitted down to all levels of government for action. Plaintiff was told that it wouldn't matter where she moved to, that this order would fallow her to wherever she went. It has, and Plaintiff feels that it has been severely damaging, wrongful, resulted in mass torts

and litigation and personal injury, and has also been defamatory, portraying Plaintiff in ways that she never has been, in order to justify the continued governmental surveillance and investigation.

Plaintiff also makes this claim under the ADA statute, 42 USCA 12100 et seq, as she has a disability and feels that she and her daughter were used for research due to her disability. Plaintiff definitely feels that all parties named in this action have taken advantage of her as a person with a disability, one that takes her longer to understand matters, especially if being given involuntary medication and treatment.

Plaintiff also makes this claim against Amtrak, as they have performed search and seizure of her legal documents, the last time being on 1/31/09, and it has had severe financial consequences for her. Stolen from Plaintiff was her purse, which contained her driver's license, checkbooks, cards, and flash drives and legal and financial documents. When Plaintiff requested that the Fresno Amtrak personnel assist her and make a report, they refused. When Plaintiff asked the Fresno police for assistance to file a report, their dispatcher told Plaintiff that if they had seized her purse, then she would not get anything back until the investigation was over. When Plaintiff spoke with Fresno police, they told her that they did not believe her. Plaintiff does not know whether they took a report as she requested or not. As a result, Plaintiff may have experienced identity theft and had debts attributed to her from this. Plaintiff wonders whether this has been a form of asset forfeiture by the government against her. In May or June 2009, while Plaintiff was on Amtrak, a man and the Amtrak bus driver wanted to know if she knew how to get to Reno, NV. Plaintiff called Amtrak and greyhound to assist the man. Plaintiff had been there once previously to see about filing a lawsuit for asbestos exposure. The man said that he used to work for Circus, Circus casino. On a subsequent Amtrak and San Francisco MUNI bus, there was also a Circus, Circus man onboard sitting near Plaintiff. Plaintiff wonders whether her information was used by someone to go to Circus, Circus, and whether Amtrak helped to arrange this, perhaps even with Senator John Ensign, whose family is in

the casino business. Plaintiff has never been a gambler, but feels that this is part of an attempt with wrongful accusations, as well as possible debts that Plaintiff may now have. Amtrak personnel have yelled at Plaintiff; intentionally misplaced her bags; damaged her bags, where one driver placed Plaintiff's bags in San Francisco in a pool of urine on the street while he placed the other patrons' bags in another area, and where they usually damage her zippers, wheels, and rip her bags, so that she has to replace them. They rarely if ever return any emails that Plaintiff has sent about this. Any complaints about them are met with retaliation.

Plaintiff also makes this claim against the airlines named in this suit, for they have assisted the federal and other agencies named in this suit with the search and seizure of her legal documents; of wrongful detention and bumping her from flights and from marking her tickets with "SSSS" so that she would be additionally searched and miss her flight; of yelling at Plaintiff and intentionally causing incidents so that Plaintiff would be made an example of in the worst possible way and suffer damage to her reputation; and of serving her food and drink that sickened her, allowing her only food or drink from certain locations or containers that they had set aside for her to have. Plaintiff was yelled at in front of all of the passengers on an American Airlines flight in early 2009, when she was trying to fly from SF0 to DCA for pursuit of this legal matter. She was bumped off her connecting flight in Boston, and had to take a bus to DC instead, which took all day to occur. Plaintiff also feels that she has been involuntarily medicated aboard these flights, as she feels that she was on July 29, 2009. On July **21**, 2009, when Plaintiff flew from SF0 to DC through Las Vegas, a man tried to implicate her as being a threat to the CIA and a US senator. On her flight on July 29, 2009, a woman tried to implicate Plaintiff as a political protester, something that she has never been. This may be a violation of the Hatch Act, where people who have been involved in politics get things done to them in an adversarial way.

The hospitals named in this suit committed intentional medical malpractice against Plaintiff, possibly at the direction of the

agencies named in this claim for damages, and may also have been using her as a subject of medical study or research without her knowledge or consent. Plaintiff has had one thing after another go wrong, especially with her pregnancies, at the hospitals named in this suit. She and her minor child have been given treatment and medications that have harmed them. Some of the medications have lawsuits against them for damages and some have been taken off the market. Recently, in June 2009, Plaintiff was recommended 2 medications that have had lawsuits for adverse side effects. If this is due to the actions of any of the other federal agencies listed in this suit, Plaintiff wishes for this court's consideration of that, as they may have precluded Plaintiff from having more than one child and having considerable difficulty and distress while doing so, where she and minor child nearly died while she was giving birth.

Plaintiff named the police, sheriff and fire departments in this claim, for they have done nothing to keep her and her daughter safe from domestic violence, and have continuously harassed Plaintiff, not taken reports, not enforced the custody order, labeled and called Plaintiff names, suggested wrongful acts such as Plaintiff ending her life and trying to drive her to suicide, wrongfully detained Plaintiff when she asks for FOIA requests for records, search her car, apartment, home, hotel, and take legal documents, tried to implicate her in things she has nothing to do with to frame her, and threatened her with arrest or detention whenever possible. They have labeled Plaintiff with terms that Plaintiff has never been called or diagnosed as before. Illinois policeman Drew Peterson was able to get away with many years of purported abuse of his former wives through similar methods to what has been done to Plaintiff. Plaintiff was told by a San Francisco lawyer that if law enforcement felt that Plaintiff was dangerous enough, they'd just kill her. Plaintiff wonders whether there is an order for wrongful death that has been issued against her. Their and other's actions have denied Plaintiff EAEJ, even though this may be a criminal matter.

Plaintiff now wonders whether it was all set up all along by the parties named in this suit to go this way against her and her minor child.

LEGAL REFRENCES

Plaintiff not only makes this claim under the FTCA, 28 USCA, but also cites the ADA 42 USCA 12101 et seq. federal statute, as she feels much of the actions taken against her resulted from her having a disability and have been intentionally discriminatory against her. Much of involves police misconduct and may involve 42 USCA 1983 civil rights violations. Most of this claim for damages results from personal injury from the actions taken against Plaintiff by the agencies and entities named in this complaint. Other sections to be cited are 412 USCA 1981 and 1985.

DAMAGES

Plaintiff requests damages of an unspecified amount at this time, to be determined after full discovery.

REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury.

Plaintiff wishes for this claim to be accepted so that she can have redress for the injuries she suffered from the actions of those agencies and individuals.

REQUEST FOR ATTORNEY'S FEES, COSTS OF COURT

Plaintiff wishes to recover any costs associated with having to pursue this matter.

Dated this December 28, 2009,

Karen McBrien, In Pro Per

DECLARATION

Washington DC

District of Columbia


1.  I am appearing as pro per in the above-entitled action.
Plaintiff has been suffering due to medication sickness.

2.  I request this Court to file this FTCA claim for damages.

3.  I request Leave of this Court to file this FTCA claim.

4.  I also wish to request more time to file this claim, so that it
is not time-barred by statute of limitations.

5.  I have attempted to contact the agencies to discuss this
action, but have not been able to reach them. They will not disclose
information, deliberately denying me access to any and all of my files.
They state many times that I have to retain an attorney, however, I
have retained attorneys in the past and they have not performed in a
beneficial manner, so that I have been denied effective assistance
of counsel. I have found that I have been precluded from legal
assistance, more than likely due to the serious wrongful accusations
and allegations made about me.

6.  I would have filed this claim sooner, and had a more perfected
claim, but I cannot get anyone for assistance who will give me correct
advice or perform for me or who even wants this matter now. Most
attorneys, now that my case and reputation are so damaged, only want
great sums of money to even consider any action. I request
appointment of counsel by this court, as this may involve a criminal DOJ
or other investigation, and I may have to file for bankruptcy soon. In
addition, having constant interference with mailing legal documents as
well as having continual search and seizure has interfered with my due
process rights, civil rights, and other constitutional rights.

7.  An order, possibly sealed or confidential, was given against me

**FILED**

PLAINTIFF'S FTCA CLAIM- 20   09 2432   DEC 2 8 2009

Clerk, U.S. District and
Bankruptcy Courts

by an agency or official or whatever entity it has been, it has been precluded me from all assistance and it has negatively and severely affected all areas of my life, resulting in physical, financial and permanent damage to my body, brain, joints, reputation, credit, and finances. I need the Court to compel discovery of this order and take judicial notice of it.

8. Once again, I recently lost valuable legal papers to search and seizure and theft, as I have in the past, due to theft, possibly by parties opposed to my efforts in litigation, and maybe even from the efforts of some of the defendants listed in this action. Prior to this, I have also lost legal documents due to search and seizure conducted of her luggage at airports, train stations, bus stations, and from her rental car and hotel rooms. A recent encounter at SFO, I was told by SFO Airport police and TSA officials that they could seize any of my legal documents that they wished. Seizure of documents last December 2008 on Virgin Airways cost Plaintiff $1100-$1300 in lost appellate court transcripts.

9. I strongly feel that I and my daughter have valid federal claims for damages that are properly heard before this court. I do not wish for this action to be dismissed. I feel that I was intentionally misled by different parties, so that she would no longer have this action. I should have been filing this claim here due to the federal agencies here and the diversity of jurisdiction.

10. I wish for this court to understand that I have committed excusable neglect of this matter, as I have no knowledge of FTCA claims, and have had numerous legal matters occurring in four jurisdictions, at roughly the same time, with pleadings due in each at around the same time. I still have appellate matters for DC as well as involving my divorce in California to attend to and have been preparing for it. I apologize to this court for not having more closely attended to this matter.

11. This is requested in the furtherance of justice, not to delay matters before this court. This claim is meritorious and involves public interest issues.

12. I have been suffering due to my disability, a change in the medication for it, and feel that parties took advantage of me in extenuating circumstances and due to my disability. I strongly feel that my disability has been used against me to deny me assistance, preclude me from any support, and characterize me *in a* false and defamatory manner so that parties would not only not wish to assist her, but also sabotage her efforts at being successful in this action.

13. I have felt that the defendants in this action have had an unfair advantage and may have been involved in me and my minor child being precluded from assistance all along.

14. I have also strongly felt that I have been denied equal access to equal justice, due to the lack of assistance that I have received, *even* though I have retained attorneys and visited many legal offices for assistance, she did not receive any that was beneficial.

15. I wish to request which Congressional Committees, chairmen, members, US Senators and their committees issued any type of order against me that has involved serious allegations, a patented device, being precluded from assistance, and having interference. I also seek to know whether any adversarial relatives may have ordered this on me, for retaliatory purposes. These relatives may have been federal contractors who may have used their positions and contacts to use against me.

I hereby state that I believe that the foregoing is true and correct. I am over 18 years of age, and if called upon, could testify to the contents of this document and the facts alleged in it.

Dated: December 28, 2009                    *Karen McBrien*

KAREN MCBRIEN